1

2

3

4

5

6

7

8

9

10

11

12

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 12, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WELLS FARGO INSURANCE SERVICES USA, INC., a foreign corporation,<br><br>              Plaintiff,<br><br>    v.<br><br>JOSHUA R. TYNDELL, WILLIAM G. DINEEN, H. KEITH MCNALLY, THOMAS F. BLUE, ERIN L. REPP, BK-JET GROUP, LLC, a Washington LLC,<br><br>              Defendants. | No.   2:16-CV-89-SMJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION IMPOSING CONSTRUCTIVE TRUST** |

13

14

15

16

17

18

19

20

      Before the Court is Plaintiff Wells Fargo Insurance Services' Motion for Preliminary Injunction Imposing Constructive Trust, ECF No. 50. Plaintiff asks the Court to impose a constructive trust that would freeze the revenues Defendants have obtained from Plaintiff's former clients and limit Defendants' access to those funds. Defendants resist the motion. The Court held a hearing on this motion on December 6, 2016, and denied Plaintiff's motion in an oral ruling on the record. This Order memorializes and supplements that ruling.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Wells Fargo Insurance Services ("WFIS") is an insurance brokerage firm with offices across the country, including Spokane, Washington. Defendants Joshua R. Tyndell, William G. Dineen, H. Keith McNally, Thomas F. Blue, and Erin L. Repp ("Named Defendants" or "named Defendants") are individuals who were previously employed by WFIS in Spokane. Named Defendants resigned from their employment with WFIS on March 16, 2016 after being with the company for periods ranging from 8 to 10-plus years. ECF No. 61-1 at 2; ECF No. 61-2 at 2; ECF No. 61-3 at 2; ECF No. 61-4 at 2; ECF No. 61-5 at 2

Prior to their departure, on January 14, 2016, named Defendants formed BK-JET Group LLC, a competing insurance brokerage firm organized in Washington State. ECF No. 53-3. BK-JET Group LLC is also a defendant in this case.

In 2010, while employed at WFIS, each named Defendant signed Trade Secrets, Confidential Information, Non-Solicitation and Assignment of Inventions Agreements ("TSA"). ECF No. 51. The TSAs at issue included non-competition terms. Key among these terms is a 2-year moratorium prohibiting named Defendants from (1) recruiting WFIS employees and (2) soliciting business from or retaining WFIS's clients during the period. ECF No. 51-1 at 2. This 2-year

period was set to begin on the date the named Defendants' employment with

WFIS terminated. *Id.*

Also highly relevant in this case is WFIS's compensation structure. Named

Defendants, and other WFIS employees, were paid through the commissions

generated from clients' annual insurance policies. *See, e.g.*, ECF No. 61-1 at 2. In

2014, WFIS announced that accounts generating $2,500 or less in commission

revenue would be transferred to an office in Phoenix, Arizona for centralized

customer servicing. ECF No. 61-2 at 3. This resulted in Spokane employees,

including named Defendants, losing commission on several accounts. *Id.* at 4;

ECF No. 61-3 at 3. A year later, WFIS announced that the threshold amount for

accounts to be transferred to Phoenix would be increased to $10,000. ECF No. 61-

3 at 3.

In tandem with this change, WFIS also announced a decrease in the

commission percentage a sales executive would receive from 35% to 30% on new

accounts generating less than $100,000 in revenue. ECF No. 61-2 at 6.

Ongoing differences between the parties, including about compensation and

the viability of the new customer service practices in the Spokane market, led

named Defendants to allegedly set in motion plans to take away significant

portions of WFIS's business in this region. *See, e.g.*, ECF No. 61-1 at 3–4

(Defendant Blue's affidavit averring that WFIS's changes upset clients, decreased his income, and prompted his decision to leave the firm).

Plaintiff accuses named Defendants of orchestrating and executing a plan to illegally misappropriate WFIS's business for themselves and of raiding WFIS's employees in Spokane. ECF No. 1 at 3–4. WFIS presents information detailing that named Defendants informed their respective clients about their planned departure from WFIS; some named Defendants may have solicited clients before leaving WFIS. *See, e.g.*, ECF No. 71-2 at 55. Plaintiff further alleges that Defendants convinced 11 other WFIS Spokane employees to join them at BK-JET. ECF No. 1 at 4.

On March 17, 2016, several clients submitted Broker of Record ("BOR") letters to WFIS alerting it that they were moving their business to BK-JET. ECF No. 52 at 2. Over the next couple of weeks, over 200 WFIS clients submitted BOR letters to WFIS. *Id.* Named Defendants admit that approximately 98% of their current client roster consists of former WFIS clients. ECF No. 53-3 at 33.

A week later, on March 24, 2016, WFIS filed suit asserting five causes of action: (1) breach of fiduciary duty; (2) tortious interference with contractual relations and contractual expectancy; (3) breach of contract; (4) violation of the Washington Trade Secrets Act; and (5) unjust enrichment and disgorgement of unlawful profits. ECF No. 1.

ORDER DENYING PRELIMINARY INJUNCTION - 4

On October 11, 2016, WFIS filed the present motion seeking an order from this Court imposing a constructive trust through a preliminary injunction. ECF No. 50. Such a trust would sequester the revenue BK-JET generated from former WFIS clients pending this litigation's resolution.

## II.    PRELIMINARY INJUNCTION STANDARD

"Preliminary injunctions are an 'extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008)). To obtain a preliminary injunction, a plaintiff must demonstrate that "(1) [he] is likely to succeed on the merits of [his] claim, (2) [he] is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of hardships tips in [his] favor, and (4) a preliminary injunction is in the public interest." *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20). Whether the plaintiff is likely to succeed on the merits is a threshold inquiry. "[W]hen 'a plaintiff has failed to show the likelihood of success on the merits, [the court] need not consider the remaining three *Winter* elements.'" *Garcia*, 786 F.3d at 740 (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)) (internal quotations and alterations omitted).

Courts in the Ninth Circuit employ a "sliding scale" approach to preliminary injunctions. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.*

Where a plaintiff seeks a preliminary injunction that alters the status quo and orders a party to "take action," courts construe such requests as seeking a mandatory injunction. *Garcia*, 786 F.3d at 740. Mandatory injunctions are particularly disfavored and should be denied "unless the facts and law clearly favor the moving party." *Id.*

## III.    DISCUSSION

Although WFIS asserts five causes of action in its complaint, it only moves for the imposition of a constructive trust upon the revenue BK-JET received from former WFIS clients on two claims: Defendants' alleged breach of fiduciary duty of loyalty and breach of contract. ECF No. 50 at 13–20.

### A.    Likelihood of Success on the Merits.

### 1.    WFIS is likely to succeed on its breach of fiduciary duty claim.

In Washington, to plead a breach of fiduciary duty, a plaintiff must show that: (1) a fiduciary relationship existed which gave rise to a duty of care on the part of the defendant to the plaintiff; (2) there was an act or omission by the

fiduciary in breach of the standard of care; (3) plaintiff sustained damages; and (4) the damages were proximately caused by the fiduciary's breach of the standard of care. *See Micro Enhancement Intern., Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217 (Wash. Ct. App. 2002).

### a.    The named Defendants owed WFIS a duty of loyalty.

> Common law agency doctrine is relevant to all employment relationships as it defines, among other things, the duties that the employer and employee owe to each other. In such a relationship, the employee or 'agent' owes fiduciary duties to the employer or 'principal.' One of these fiduciary duties is the 'duty to act loyally for the principal's benefit in all matters connected with the agency relationship.' This duty prevents a current employee from competing with the employer or assisting others to compete with the employer. It also prevents an employee from using the employer's property, including confidential information, for the employee's or another's purposes.

*Steve Cole Salon, LLC v. Salon Lotus*, 148 Wash.App. 1036, *5 (Wash. Ct. App. Feb. 9, 2009) (citing Restatement (Third) of Agency § 8.05 (2006)); *Micro Enhancement Intern., Inc.*, 40 P.3d at 1217–18 (recognizing that a principal-agent relationship entails a fiduciary relationship between the parties as a matter of law); *see also Omega Morgan, Inc. v. Heely*, 2015 WL 1954653, *6 (W.D. Wash. Apr. 29, 2015) ("During the period of his or her employment, an employee is not 'entitled to solicit customers for [a] rival business . . .' or to act in direct competition with his or her employer's business."); *Kieburtz & Associates, Inc. v. Rehn,* 842 P.2d 985, 988 (Wash. Ct. App. Dec. 31, 1992) (citing Restatement

(Second) of Agency § 393 cmt. e (1958)); *Evergreen Moneysource Mortg. Co. v. Shannon*, 274 P.3d 375, 380 (Wash. Ct. App. Feb. 16, 2012) ("During the period of employment, an employee has a duty to refrain from soliciting customers for a rival business or to act in direct competition with his or her employer's business.").

In its complaint, WFIS asserts that Defendants breached their fiduciary duties of loyalty owed to their former employer. ECF No. 1 at 16. It is undisputed that Defendants Tyndell, Dineen, McNally, Blue, and Repp were WFIS employees. Thus, under Washington law, named Defendants owed a duty of loyalty not to compete with or assist others to compete with WFIS while they were employed by Plaintiff.

Named Defendants argue that they were not in a fiduciary relationship with WFIS. ECF No. 61 at 8–11. They contend that, outside of a few defined fiduciary relationships, determining whether a fiduciary relationship exists is a matter of fact. *Id.* at 9; *Moon v. Phipps*, 411 P.2d 157, 160 (1966) ("A simple reposing of trust and confidence in the integrity of another does not alone make of the latter a fiduciary. There must be additional circumstances, or a relationship that induces the trusting party to relax the care and vigilance which he would ordinarily exercise for his own protection.''); *Micro Enhancement Intern., Inc.*, 40 P.3d at 1217–18 ("[A] fiduciary relationship can arise *in fact* regardless of the

relationship *in law* between the parties.").  Citing *Liebergesell v. Evans*,

Defendants insist that a fiduciary duty will be found to exist when one party

"occupies such a relation to the other party as to justify the latter in expecting that

his interests will be cared for[.]" 613 P.2d 1170, 1175 (Wash. 1980) (citations

omitted). They assert that the principal-agent relationship does not always create a

fiduciary relationship. ECF No. 61 at 9–11. Specifically, Defendants contest

whether at-will employees owe any fiduciary duties to their employer. *Id.* at 10.

They declare that no Washington court has held that such a relationship exists and

cite to several cases in other states holding that the employer-employee

relationship is not fiduciary in nature. *Id.* Lastly, considering the facts in this case,

Defendants contend that the circumstances here do not create a fiduciary

relationship.

 Washington state law is clear that agency law imposes a duty of loyalty on

agents regarding their principals. Defendants make a spirited argument based in

some good law that would be relevant in other factual contexts. However, agency

principles apply in the employer-employee relationship context under Washington

law. Therefore, Defendants arguments on this point are unpersuasive.

   **b.** **Named Defendants likely took actions while still employed at WFIS that violated their duty of loyalty to WFIS.**

 Courts distinguish between employees who undertook "mere preparation"

to compete with a former employer—which would not violate an employee's duty

ORDER DENYING PRELIMINARY INJUNCTION - 9

of loyalty—and those who failed to act in good faith in their employer's interest. Mark A. Rothstein, et al, 2 Employment Law § 8:12 (5th ed. 2016). When an employee solicits their employer's customers to join a future business, this may cross the line and constitute a breach of an employee's duty of loyalty. *Id.*; *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1085 (9th Cir. 2003) (citing the Restatement (Second) of Agency—which Washington courts have recognized as a persuasive legal authority—for the proposition that an employee cannot solicit customers for a rival business before the end of her employment).

Plaintiff presents information demonstrating that while named Defendants were still employed by WFIS, named Defendants approached clients to inform them named Defendants were branching off on their own. *See, e.g.*, ECF No. 71-2 at 52 (McNally's deposition testimony acknowledging that he met with a large percentage of his clients in December 2015 and informed them that he and others in the office were looking to start their own agency and told one client "we'd like you to be part of it."); *see also* ECF No. 53-1 at 33 (Tyndell's deposition testimony asserting that approximately 98% of BK-JET's clients are former WFIS clients); ECF No. 53-2 at 55 (Blue's deposition testimony stating that he intended to pursue the clients he serviced at WFIS, but does not state when he began to do this).

Determining whether named Defendants breached their duty of loyalty to WFIS is a fact intensive question. WFIS will need to show that each named Defendant took actions that crossed the line from "mere preparation" into active solicitation, at a time named Defendants were prohibited from doing so. Given that the overwhelming percentage of BK-JET's clients came from WFIS, and the timing of when many moved their business to BK-JET, it is likely that Plaintiff could demonstrate that Defendants improperly solicited them.

However, named Defendants argue that they merely discussed their intent to leave WFIS, not that they solicited customers. *See, e.g.*, ECF No. 53-1 at 38 (Tyndell's deposition testimony stating: "I don't recall specifically asking anybody if they would join the new entity. I discussed the fact that I was going to be likely leaving [WFIS] and either starting my own shop, joining with others or joining another brokerage of some sort.").

Nevertheless, WFIS submits exhibits demonstrating that on March 17, 2016—the day after Defendants resigned—WFIS's Spokane office began receiving Broker of Record (BOR) letters indicating that clients had moved their business to BK-JET. ECF No. 52 at 2. Within two weeks, over 200 clients had moved to BK-JET. *Id.* Given the timing of the client moves, WFIS is likely to demonstrate that named Defendants breached their duty of loyalty by soliciting clients from WFIS before their employment terminated.

ORDER DENYING PRELIMINARY INJUNCTION - 11

### c.    WFIS likely suffered damages.

Defendants submitted a copy of WFIS's expert report opining that WFIS lost $6,560,000 in business to BK-JET. ECF No. 62-2. This analysis, in addition to the discussion above, demonstrates that WFIS can likely establish that it suffered damages.

### d.    WFIS's likely damages were proximately caused by named Defendants' actions.

The damages WFIS's expert calculated are based on revenue from BK-JET's clients. ECF No. 62-2. Given Tyndell's testimony that 98% of BK-JET's clients are former WFIS clients, WFIS can likely demonstrate that named Defendants' actions proximately caused Plaintiff's damages. ECF No. 53-1 at 33.

Therefore, given the above discussion, WFIS is likely to demonstrate that named Defendants breached their fiduciary duty of loyalty to WFIS.

### 2.    It is unclear whether WFIS is likely to prevail on its breach of contract claim.

To prevail on a breach of contract claim a plaintiff must show that: (1) a valid contract exists; (2) the contract was breached by defendant; (3) plaintiff performed; and (4) plaintiff suffered damages because of defendant's breach. *See Lehrer v. State, Dept. of Social and Health Services*, 5 P.3d 722, 727 (Wash. Ct. App., 2000).

### a. At this juncture, it is unclear whether the non-compete agreements named Defendants signed are enforceable.

In Washington, non-compete agreements are enforceable if they are reasonable and lawful. *Amazon.com, Inc. v. Powers*, No. C12–1911RAJ, 2012 WL 6726538, *8 (W.D. Wash. Dec. 27, 2012); *Emerick v. Cardiac Study Ctr., Inc., P.S.*, 286 P.3d 689, 692 (Wash. Ct. App. Feb. 28, 2012). Courts test reasonableness by asking:

> (1) whether the restraint is necessary to protect the employer's business or goodwill, (2) whether it imposes on the employee any greater restraint than is reasonably necessary to secure the employer's business or goodwill, and (3) whether enforcing the covenant would injure the public through loss of the employee's service and skill to the extent that the court should not enforce the covenant, i.e., whether it violates public policy.

*Emerick*, 286 P.3d at 692. If a court finds a restraint unreasonable, it can modify the agreement by enforcing it to the extent necessary to accomplish the contract's purpose. *Id.*

Reasonable non-compete agreements may also be unenforceable under certain circumstances. For example, where adequate consideration is lacking. *Labroila v. Pollard Group Inc.*, 100 P.3d 791 (Wash. 2004); *McKasson v. Johnson*, 178 Wash.App. 422, 427–29 (Wash. Ct. App. Dec. 17, 2013) (holding that continuing employment is insufficient consideration to support a non-compete contract). Like contracts generally, a party's material breach of a non-compete agreement can constitute grounds for its unenforceability. *Dalmatia Import*

ORDER DENYING PRELIMINARY INJUNCTION - 13

*Group, Inc. v. Foodmatch, Inc.*, 2016 WL 6525407, *4 (E.D. Penn. Nov. 3, 2016)

(noting without deciding that a material breach of a contract between two former

business partners can excuse a party from performing under the contract,

including the non-compete clause). Such material breaches can include changes to

an employee's compensation structure. *Protégé Software Services, Inc. v.

Colameta*, 30 Mass. L. Rptr. 127, 2012 WL 3030268, *7 (Mass. Sup. Ct. July 16,

2012) (holding that the employer's unilateral alteration of defendant's

compensation was a material breach); *Supermarket Merchandising & Supply, Inc.

v. Marschuetz*, 196 S.W.3d 581, 585 (Mo. Ct. App. May 16, 2006) (holding that

an employer's unilateral changes to an employee's compensation plan, over his

objection, constituted a material breach of a non-compete agreement, rendering

employer's hands unclean, and barring enforcement of the non-compete

agreement.). Courts have also declined to enforce non-compete agreements and

provide equitable relief where an employer has unclean hands. *North Pac. Lumber

Co. v. Oliver*, 596 P.2d 931 (Or. June 19, 1979) (holding that a non-compete

agreement was unenforceable where the employer maintained a policy

encouraging its employees to cheat customers and effectuating this practice was a

part of the employee's employment).

### i.    It is an open question whether WFIS materially breached the non-compete agreements.

It is undisputed that all named Defendants signed the TSAs. ECF No. 51-1 at 2. The named Defendants signed these agreements between January and May 2010. *Id.* After signing the TSAs, named Defendants were continually employed at WFIS until they resigned on March 16, 2016. ECF No. 61 at 7.

However, the parties contest whether WFIS materially breached the non-compete agreements by allegedly:

(1) providing insufficient consideration,

(2) not providing "new and additional benefits" as promised beyond the additional commission payment to each named Defendant paid in 2011, and

(3) taking back the promised consideration by substantially reducing Defendants' compensation after altering the conditions under which employees received commissions.

ECF No. 61 at 19.

To the extent WFIS argues that the promise of continued employment served as sufficient consideration, ECF No. 70 at 8, that argument is invalid. Washington courts have held that a promise of continued employment is insufficient consideration. *McKasson*, 178 Wash.App. at 427–29.

Moreover, at this juncture, the Court cannot conclude whether "the ability to participate in a new compensation plan containing new and additional benefits,

ORDER DENYING PRELIMINARY INJUNCTION - 15

1    which include, but are not limited to, a guaranteed draw and an increased

2    commission percentage" constituted sufficient consideration. ECF No. 70 at 8;

3    *see, e.g.*, ECF No. 51-1 at Tyndell TSA at 1. Defendants have presented sufficient

4    information to contest whether the changes WFIS unilaterally made to their

5    compensation structure render the non-compete portions of the TSAs at issue

6    unenforceable. *See, e.g.*, ECF No. 61-1 at 2–5, Decl. of Thomas F. Blue

7    (describing WFIS's compensation policy changes as follows: all accounts

8    generating under $2,500 in revenue for WFIS would be transferred to a

9    centralized customer service center in Phoenix and local Spokane employees were

10   prevented from servicing those accounts. By the summer of 2015 all accounts

11   under $10,000 would be transferred to Phoenix and taken away from Spokane.

12   This resulted in Defendant Blue's income decreasing by more than $50,000 since

13   many of Spokane's accounts were smaller revenue generating clients.).

14        The alleged changes to Defendants' compensation structure are significant.

15   Particularly important, these changes occurred years *after* Defendants signed the

16   non-compete agreements WFIS seeks to enforce. *See, e.g.*, ECF No. 61-2. It is

17   unclear whether the additional one-time compensation each named Defendant

18   received in 2011 ranging from $115.58 to $2,702.51, ECF No. 51-1 at 3, was

19   sufficient consideration to support the changes. Moreover, the last relevant change

20   to WFIS's compensation structure was to take effect in 2016—almost six years

after named Defendants signed the non-competition agreements at issue. *See, e.g.*, ECF No. 61-2 at 6. Other courts have held that material changes to an employees' compensation can be grounds for not enforcing a non-compete agreement. *Supermarket Merchandising*, 196 S.W.3d at 585. It is an open question whether these changes constitute material changes.

Defendants further argue that even if WFIS did not materially breach the non-compete agreements, the TSA's are nevertheless unenforceable because the changes to their compensation substantially changed the terms of their employment. ECF No. 61 at 19. For the reasons discussed above, this argument is well taken. Additionally, discovery in this matter has not yet closed so it is possible that more details about the compensation structure at issue will come to light. At the very least, Defendants submit enough information to make a plausible argument that the conditions of their employment were such that it is unclear that the 2010 TSAs are valid, enforceable contracts. Therefore, the Court need not address the remaining factors pertinent to a breach of contract analysis.

Accordingly, WFIS cannot show that it is likely to prevail on its breach of contract claim.

**B.    WFIS is unlikely to suffer irreparable harm without the requested relief.**

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal.*

*v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Here, WFIS asserts that money damages will not suffice because named Defendants' actions diverted insurance business away and it is unlikely to recuperate those lost clients or the reputational damage inflicted. Plaintiff further asserts that Defendants are thinly capitalized and Defendants may not have the money to pay damages at the case's conclusion. Indeed, Defendants acknowledged during oral argument that they do not have insurance that would pay the claims at issue in this case, creating a further question about their ability to pay any adverse judgment.

However, WFIS's expert report belies the thrust of this argument. Plaintiff's own expert has provided an opinion quantifying the damages WFIS has suffered upon losing its clients to BK-JET. WFIS's injury has an available remedy at law—money damages. Plaintiff has, therefore, failed to demonstrate that absent the requested remedy, it would suffer irreparable harm.

**C.    The balance of the hardships tips in Defendants' favor.**

The relief WFIS seeks would effectively financially cripple BK-JET and tie up most of Defendants' income since 98% of their clients are former WFIS clients. This does not keep the status quo, rather it would significantly alter it. As named Defendants have averred in their declarations, they have families to support, college tuition payments to make, and otherwise pay for life's necessities through their work. *See, e.g.*, ECF No. 61-3 at 3. In contrast, WFIS is a major

corporation. Though WFIS has demonstrated that it is likely to suffer harm, this harm is financial and not irreparable. WFIS can likely bear the adverse financial impact it has allegedly suffered while this litigation is pending. It is unclear whether Defendants could similarly endure the imposition of a constructive trust on the vast majority of their revenues.

The balance of the hardship, therefore, tips toward Defendants.

**D.      Granting a preliminary injunction in this case is not in the public interest.**

In determining whether a preliminary injunction is in the public interest, courts focus their inquiry on the impact the requested relief would have on non-parties. *League of Wilderness Defenders/Blue Mountain Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). Here, the most likely impacted non-parties are BK-JET's clients. As discussed, imposing the requested constructive trust on BK-JET could very well financially cripple Defendants, raising the real possibility that the clients at issue will not be served by their chosen insurance brokers. *See, e.g.*, 61-4 at 9–10 (explaining why Defendant Repp believes her clients would be harmed by prohibiting them from working with their chosen insurance brokers). This would negatively impact these clients. As such, this factor also weighs against granting the requested relief.

Although Plaintiff has demonstrated a likelihood success on the merits of its fiduciary duty claim, it has not similarly demonstrated a likelihood of success on

1   its breach of contract claim. Moreover, for the reasons detailed above, the analysis

2   relevant to the remaining *Winter* factors militate against granting the requested

3   preliminary injunction. As such, Plaintiff's motion is denied.

4       **E.**    **WFIS is not required to post a bond under Rule 65(c) because an injunction is not warranted in this case.**

5

6         Federal Rule of Civil Procedure 65(c) states that a "court may issue a

7   preliminary injunction or a temporary restraining order only if the movant gives

8   security in an amount that the court considers proper to pay the costs and damages

9   sustained by any party found to have been wrongfully enjoined or restrained."

10  Given that the Court denies WFIS's requested relief, Plaintiff's request on this

11  issue is moot.

12  **IV.**    **CONCLUSION**

13        WFIS sought relief that courts disfavor and rarely grant—a mandatory

14  preliminary injunction ordering Defendants to place revenue from certain clients

15  in a constructive trust. Such a trust would not maintain the status quo but alter it

16  since Defendants would be forced to create the proposed trust, place a majority of

17  their revenue in it, and they would be forbidden from accessing the vast majority

18  of the assets in it. At oral argument, Plaintiff offered to allow Defendants access to

19  enough money as needed to continue their business operations. Even this

20  suggestion, however, would place a mandatory injunction on Defendants.

    Granting such a request demands that WFIS meet a high burden. Based on the

record before the Court as detailed above, Plaintiff has not met its burden.

Therefore, the Court **DENIES** Plaintiff's motion.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Preliminary Injunction Imposing Constructive Trust, **ECF No. 50**, is **DENIED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 12th day of December 2016.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER DENYING PRELIMINARY INJUNCTION **-** 21